UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DIANA VILLAVICENCIO,

    Plaintiff,

v.                                                           Case No. 1:09-CV-513

CAMOPLAST CROCKER LLC,             HON. GORDON J. QUIST

    Defendant.
_____/

## **OPINION**

Plaintiff, Diana Villavicencio ("Villavicencio"), has sued her former employer, Camoplast Crocker LLC ("Camoplast"), alleging that Camoplast retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, for engaging in protected activity. Camoplast has moved for summary judgment on both of Villavicencio's retaliation claims. Camoplast has also moved to strike the affidavits Villavicencio filed in support of her response to Camoplast's motion for summary judgment, and Villavicencio has filed a motion for leave to file declarations correcting the deficiencies Camoplast identified in its motion to strike.[1]

For the reasons set forth below, the Court will: (1) grant Camoplast summary judgment on both claims; (2) grant Villavicencio leave to file the declarations; and (3) deny Camoplast's motion to strike.

---
[1] The court was unable to arrange an early time for oral argument. However, the court believes that oral argument was not necessary and would not have been particularly helpful.

## I. Facts

Villavicencio is a 46-year-old black woman. She was employed by Camoplast from June 11, 2007, through June 2, 2009, as an hourly production worker. In October 2007, Villavicencio claimed that she hurt her left arm while working at Camoplast and filed a workers compensation claim. Camoplast's workers compensation insurer disputed Villavicencio's claim on the ground that the injury predated Villavicencio's employment with Camoplast.

As of October 3, 2007, Villavicencio was restricted to no repetitive use of her left wrist and a fifteen pound limit for lifting/pushing/pulling, with work to pain tolerance of her left wrist. (Villavicencio Dep. at 112-13 & Dep. Ex. 33.) On October 10, 2007, her restrictions were no repetitive use of the left wrist, a fifteen pound limit for lifting/pushing/pulling, and limited use of the left wrist. (*Id.* at 113-14 & Dep. Ex. 34.) On October 19, 2007, Villavicencio's doctor released her to using her left arm to pain tolerance without any other restrictions. (*Id.* at 114 & Dep. Ex. 35.) On May 6, 2008, Villavicencio's doctor restricted her to light duty work with no lifting more than fifteen pounds with the left upper extremity and avoiding repetitive activity with the left hand. (*Id.* Dep. Ex. 43.) Although Camoplast's insurer was disputing Villavicencio's workers compensation claim during this period, Camoplast allowed Villavicencio to continue working and accommodated her medical restrictions with light duty work within her restrictions when such work was available. (*Id.* at 51; Huskey Aff. ¶ 2.)

On Friday August 1, 2008, Villavicencio delivered two notes to Kimberly Huskey ("Huskey), Camoplast's Human Resources Coordinator, from Primary-Care One, P.C., excusing Villavicencio from work for Friday, August 1, 2008, and Monday, August 4, 2008. In addition to the medical slips, Villavicencio gave Huskey a three-page handwritten letter that was apparently

attached to the back of the medical slips.² (*Id.* at 44-45.) According to Villavicencio, she did not tell Huskey what the letter was and they did not discuss it, but Huskey read it. (*Id.* at 45.) In her letter, Villavicencio complained about several issues, including an incident in which the police were called because a coworker alleged that Villavicencio hit the coworker's car; other employees who were injured at work and, unlike Villavicencio, had their medical bills paid by Camoplast; and not being paid the correct rate of pay for the different jobs she had done. Toward the end of her letter, Villavicencio complained about: "Promotion issues regarding people of color is stressing me out mentally and physically. I work very hard but it don't seem to count for much regarding promotions." (*Id.* Dep. Ex. 9 at 2.)

On August 4, 2008, Villavicencio met with Huskey and David Loreth, Camoplast's Production Manager. During that meeting, Villavicencio submitted another note from her doctor stating: "<u>Must</u> wear wrist brace. No left handed work." (*Id.* at 111 & Dep. Ex. 45.) This restriction was more severe than the prior restrictions because Villavicencio had previously been allowed to use her left hand to some degree, whereas now she was not permitted to use her left hand at all. Huskey informed Villavicencio that Camoplast did not have any work for her that did not require use of the left hand, as specified by the doctor's restrictions. (*Id.* at 34, 45, 47; Huskey Aff. ¶ 4.) Later that day, Huskey gave Villavicencio a Medical Leave Request form stating that the reason for the requested leave was due to Villavicencio's wrist. Villavicencio accepted the form but never signed or returned it to Camoplast. (Villavicencio Dep. at 78-79.) Nonetheless, Camoplast placed Villavicencio on a medical leave of absence and did not terminate her. (Huskey Aff. ¶ 9.)

---

²An issue of fact remains with regard to when Villavicencio gave her handwritten letter to Huskey. Villavicencio testified that she gave it to Huskey on Friday, August 1. (Villavicencio Dep. at 44-45.) In her affidavit, Huskey states that Villavicencio delivered her handwritten letter on the following Monday, August 4. (Huskey Aff. ¶ 6.) The dispute is immaterial for purposes of the instant motion, because the Court assumes that Villavicencio gave the letter to Huskey on August 1.

At some point between August 4 and August 7, 2008, Huskey contacted Villavicencio to arrange a meeting to discuss the complaints Villavicencio made in her August 1 letter. (Huskey Aff. ¶ 6.) In preparation for the meeting, Huskey wrote a list of questions inquiring about Villavicencio's complaints. The questions addressed job bids, hourly rates, Villavicencio's claim that she was a Cell Leader, Camoplast's attendance policy, and "[w]hat type of promotion issues regarding people of color?" (Villavicencio Dep. Ex. 10.) Villavicencio went to Camoplast on August 7 to speak with Huskey about her complaints. (Villavicencio Dep. at 69.) During the meeting, Huskey gave Villavicencio the typed list of questions she had prepared. (Huskey Aff. ¶ 8.) According to Villavicencio, the meeting lasted approximately 30 minutes and she, Huskey, and Loreth discussed the questions that Huskey had prepared. (Villavicencio Dep. at 67.)

Between August and December 2008, Villavicencio did not work at Camoplast because no work within Villavicencio's restrictions was available. However, Villavicencio continued to receive health insurance benefits until December 31, 2008. (Villavicencio Dep. at 91-92.) Camoplast terminated Villavicencio's health benefits only because she failed to pay her share of the premiums. (*Id.* Dep. Exs. 17 and 21.)

On December 12, 2008, Villavicencio gave Huskey a slip from her doctor stating that she could return to light duty work on December 15, 2008, with no constant repetitive movement and a fifteen pound weight restriction. (*Id.* at 105-06 & Dep. Ex. 48.) At the time she delivered the doctor's return-to-work slip, Villavicencio and Huskey discussed Villavicencio's return to work. Shortly thereafter, Huskey spoke with Alan Maxwell, Camoplast's Controller, and Loreth, and determined that no work was available for someone with Villavicencio's restrictions. Although Camoplast had previously accommodated similar restrictions for Villavicencio, it could no longer do so because Camoplast had significantly less work due to the recent economic downturn. (Huskey Aff. ¶ 13.) As a consequence, employees at Camoplast's Three Rivers plant were required to

4

perform a broader range of functions not limited to light work. (*Id.*) Huskey called Villavicencio later that afternoon and advised her that no work would be available on December 15.

In spite of Huskey's call, Villavicencio showed up at Camoplast's plant on December 15, 2008, and punched in for work. Because there was still no work for Villavicencio, she was sent home. Villavicencio had no further contact with Camoplast. She remained on a medical leave of absence until June 2, 2009, when she was discharged for exceeding the maximum amount of leave.

Villavicencio filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 8, 2008. The EEOC issued a right to sue letter on March 9, 2009, and Villavicencio filed her complaint in the instant case on June 4, 2009.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

Although Villavicencio references race and age discrimination claims in her complaint, her claims are limited to retaliation claims under Title VII and the ADEA based upon the same operative

5

facts. That is, Villavicencio alleges she opposed race and age discrimination in her August 1, 2008, letter and, thereafter, Camoplast unlawfully retaliated against her in several ways.

A.  **Motions to Strike and For Leave to File Declarations**

As an initial matter, the Court must decide whether to consider the affidavits Villavicencio has submitted in response to Camoplast's motion for summary judgment. Camoplast filed its motion for summary judgment on March 24, 2010. On April 21, 2010, Villavicencio filed a motion for an extension of time to respond to Camoplast's motion. Villavicencio noted that her response was due on April 21, 2010, but for a number of reasons, including her counsel's commitments in other cases and his wife's health problems, she was unable to file a timely response. In addition, Villavicencio advised that in responding to the summary judgment motion she sought to rely on testimony by Camoplast's representatives at her unemployment hearing and needed additional time to transcribe the recording of that proceeding. (Pl.'s Mot. to Extend Time ¶ 5.) On April 22, 2010, the Court entered an Order extending the response deadline to May 19, 2010.

Villavicencio filed her response to the summary judgment motion on May 18, 2010, supported by two affidavits – her own and that of Jessica Meister. Both affidavits averred: "I state under penalty of law and pursuant to 28 U.S.C. § 1746 that the facts in this affidavit are true and that I know these facts from my personal knowledge." Camoplast filed its reply to Villavicencio's response on June 1, 2010, along with a motion to strike both affidavits. Camoplast argued that the affidavits were defective for a number of reasons, but primarily because they failed to comply with 28 U.S.C. § 1746. Villavicencio responded by seeking leave to file declarations that complied with § 1746.[3]

---

[3] Villavicencio also added a substantive paragraph to her declaration that was not included in her affidavit.

Although the declarations Villavicencio seeks leave to file are untimely, the Court will nonetheless grant Villavicencio's motion and accept them because they cure the deficiencies of the prior affidavits with regard to § 1746. As for Camoplast's arguments regarding the admissibility of statements allegedly made by Camoplast's representatives at the unemployment proceeding, the Court will address that issue in its discussion of the merits, below. Thus, the Court will deny Camoplast's motion to strike.

**B.     Motion for Summary Judgment**

Title VII's anti-retaliation provision prohibits retaliation when an employee "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The ADEA's anti-retaliation provision similarly provides that an employer may not retaliate against an employee for "oppos[ing] any practice made unlawful by [the ADEA]" or because an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623. Villavicencio's retaliation claims are premised upon her opposition to practices made unlawful by Title VII and the ADEA.

The framework for retaliation claims based upon circumstantial evidence is the same for both Title VII and the ADEA. *Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 809 n.3 (6th Cir. 2009) (en banc); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). The *McDonnell Douglas* burden-shifting approach is applied in evaluating retaliation claims. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of the plaintiff's protected activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity

7

and the adverse employment action. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562-63 (6th Cir. 2004). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)). If the defendant meets its burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was mere pretext. This entails a showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

   1.   **Prima Facie Case**

Villavicencio's retaliation claims fail because she cannot make out a prima facie case of either age-based or race-based retaliation.

*Protected Activity*

Camoplast appears to concede, and the Court concludes, that Villavicencio has established the first two elements of a prima facie case of retaliation under Title VII because she complained of a failure to promote on the basis of race in her letter and Camoplast was aware of the complaint. However, Villavicencio cannot establish the first two elements of a prima facie claim under the ADEA because there is no evidence that she complained of age discrimination. Villavicencio alleges that the protected activity was her August 1, 2008, letter.[4] While the letter indicates that Villavicencio was complaining of race discrimination ("Promotion issues regarding people of color

---

[4] A plaintiff asserting a retaliation claim under either Title VII's or the ADEA's opposition clause must show that the opposition was based on "a reasonable and good faith belief that the opposed practices were unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Thus, a plaintiff can allege a retaliation claim under the opposition clause even if the challenged practice is ultimately found not to be unlawful, so long as the employee had a good faith belief. *Id.* at 579-80. Although Camoplast has not raised the issue of Villavicencio's good faith belief that Camoplast violated either Title VII or the ADEA, the fact that Villavicencio did not mention age discrimination or allege that Camoplast otherwise was violating the ADA indicates that she lacked an objectively reasonable belief that Camoplast engaged in unlawful conduct.

8

is stressing me out mentally and physically."), it does not mention age, nor does it reasonably suggest that Villavicencio was complaining of age discrimination.

The Sixth Circuit has stated that "[i]n order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA." *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007). In *Fox*, the court held that the plaintiff's statements to a customer regarding his lawsuit against his employer did not constitute protected activity under the ADEA because although the plaintiff complained that he was denied a promotion, he did not tell the customer that his age was a factor in the denial or that the employer engaged in unlawful employment practices. *Id.* at 592. The court observed:

> [T]here is simply no evidence in the record that Fox told Poplin [the customer] that he had been discriminated against on the basis of his age. Neither Poplin's affidavit nor Fox's personnel memo reflects any discussion of age discrimination, and in his deposition, Fox denied making any disparaging remarks about age discrimination by Eagle to Poplin.

*Id.* In *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989), the court held in the context of a Title VII retaliation claim that the plaintiff's letter referring to an employee being a racist and stating that charges against him were the result of "ethnocism" did not constitute protected activity. The court noted that the racist comment was directed at a coworker and did not suggest the company was engaging in unlawful employment practices, and it held that the "ethnocism" statement was simply too vague. The court observed:

> "[A] vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination. In our view, such would constitute an intolerable intrusion into the workplace.

*Id.* at 1313. *See also Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (holding that the plaintiff failed to show that he engaged in protected conduct because he was not complaining

9

about a practice made unlawful by the ADEA, but instead merely asserted that he had been treated unfairly because the position he sought was awarded to a less qualified individual).

Villavicencio contends the following statement in her letter constitutes protected conduct under the ADEA: "One particular person was hired off the street and put into utility position although there were other people with more experience and seniority who should have been able to at least bid on the job." Although this statement mentions nothing about age discrimination, Villavicencio also relies on her declaration, in which she states that the person hired off the street was about 20 years old and a brother of someone in the company, while the more experienced people were 40 or older. (Villavicencio Decl. ¶ 5.) The information in Villavicencio's declaration is irrelevant because there is no evidence that Villavicencio conveyed the information to Huskey or anyone else at Camoplast. Villavicencio's general comments about experience and seniority are too vague to constitute protected conduct. *See Barber*, 68 F.3d at 702 ("A general complaint of unfair treatment does not translate into a charge of illegal age discrimination."). Moreover, there is no evidence that Camoplast was aware that Villavicencio was complaining of age discrimination. The list of questions Huskey prepared for the August 7 meeting confirms this, because it only addressed Villavicencio's allegation of race discrimination, and Villavicencio testified that only the questions on the list were discussed during the meeting. (Villavicencio Dep. at 67.)

*Adverse Action*

In her complaint, Villavicencio alleges that Camoplast took the following adverse actions against her: (1) refused to permit her to perform light duty work; (2) refused to permit her to work; (3) falsely claimed that she was on medical leave; (4) falsely claimed that she did not show up for work; (5) refused to extend medical benefits to her through workers compensation or otherwise; and (6) refused to provide her work through which she could earn medical benefits. (Compl. ¶ 12.)

These six actions essentially reduce to three adverse actions: (1) refusing to give Villavicencio work; (2) placing her on a medical leave of absence from August 4, 2008, through December 15, 2008; and (3) refusing to continue her medical benefits through workers compensation or otherwise. For purposes of the instant motion, the Court concludes that these actions are sufficiently adverse. *See Niswander v. Cincinnati Ins. Co.*, 529 F. 3d 714, 720 (6th Cir. 2008).

### *Causal Connection*

In order to meet the causal connection requirement of the prima facie case, a plaintiff must produce sufficient evidence from which an inference can be reasonably drawn that the protected activity was the likely reason for the adverse action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). While temporal proximity is an indicator of a causal connection, the Sixth Circuit has repeatedly held that temporal proximity, without other evidence of retaliatory conduct, is generally insufficient to establish the required causal connection for a retaliation claim. *See, e.g.*, *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007); *Nguyen*, 229 F.3d at 566; *McElroy v. Philips Med. Sys. N. Am., Inc.*, Nos. 03-6219, 03-6351, 2005 WL 406335, at *10 (6th Cir. Feb. 18, 2005) (per curiam).

The first adverse action Villavicencio alleges is Camoplast's refusal to extend her medical benefits through workers compensation or otherwise. While the factual basis of this allegation is not entirely clear, it appears that Villavicencio asserts that Camoplast let a white female employee receive workers compensation benefits but it denied them to Villavicencio. The problem with this adverse action is that Camoplast denied Villavicencio's workers compensation in October 2007, almost ten months *before* she engaged in the protected conduct. Thus, there could be no causal connection as a matter of logic and law.

Villavicencio next alleges that Camoplast took adverse action against her after she submitted the August 1, 2008, letter by refusing to let her perform light work and by placing her on a medical leave of absence. Villavicencio testified, "I was figuring that it [having no work for her] might have been because I wrote her that letter. That's the only thing I was coming - - that was coming into my head." (Villavicencio Dep. at 47.) She also admits that no one from Camoplast referenced the August 1 letter when telling her that no work was available that could accommodate her restrictions. (*Id.*)

While some Sixth Circuit cases have suggested that in an appropriate case, temporal proximity alone may be sufficient to support an inference of retaliation where the time between the protected activity and the adverse action is very brief and there are no other circumstances tending to suggest a non-retaliatory reason for the adverse action, *see, e.g., Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."), no such inference is permissible in this case. That is, while the adverse actions occurred within days after Villavicencio submitted her August 1 letter to Huskey, she also submitted, either contemporaneously or in the interim, a note from her doctor imposing a new and significant limitation on her ability to work – no left handed work. The doctor's note thus constitutes an intervening event that substantially negates the evidentiary value of the close temporal proximity between the August 1 letter and the adverse actions. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("In analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn.").

Villavicencio argues that she has presented additional evidence from which a jury could infer retaliation – that Camoplast denies that the August 7, 2008, meeting, in which Huskey and Loreth discussed the August 1 letter and Huskey's list of questions, occurred. Villavicencio suggests that this evidence shows that Camoplast was attempting to conceal its knowledge of her race complaint. This argument is specious because it is amply contradicted by the undisputed evidence in the record that Camoplast was aware of Villavicencio's complaints and attempted to discuss them with her. Moreover, contrary to Villavicencio's representation, Camoplast has shown it represented in its EEOC Position Statement that it was aware of Villavicencio's complaints and attempted to address them. Thus, as noted above, Villavicencio's evidence of temporal proximity is insufficient to establish a causal connection.

Finally, to the extent Villavicencio relies on the cancellation of her health insurance at the end of December 2008 as an adverse action, Villavicencio also has failed to show a causal connection between her August 1 letter and the cancellation of her insurance five months later. The temporal proximity between these two events is too remote to allow an inference of a retaliatory motive. *See Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) (rejecting the plaintiff's argument that a two-month gap between his EEOC charge and the retaliatory actions was sufficient to support a causal connection). Moreover, Camoplast has presented undisputed evidence showing that Villavicencio's insurance was cancelled after she failed to pay her share of the premiums, as required of employees.

### 2. Reason for Adverse Action and Pretext

Even if Villavicencio were able to establish a causal connection, Camoplast has presented a legitimate reason for refusing to allow Villavicencio to perform light duty work, namely, that it had no work available that could accommodate her no left-hand work restriction. In addition,

13

Camoplast states that it "claimed" Villavicencio was on medical leave because it actually placed her on medical leave as a result of her restrictions precluding her from doing any available work.

Villavicencio argues that Camoplast's reasons are pretext for three reasons. First, Villavicencio asserts that she did not ask to be placed on medical leave and was able to do light work. This argument, however, ignores the doctor's note that Villavicencio gave Huskey, which stated that she was to do "<u>No</u> left-handed work." This was a new restriction, and Camoplast had no work that could be performed without use of the left hand. Villavicencio also cites an August 14, 2008, medical statement completed by her doctor as evidence that she could work. But, contrary to Villavicencio's argument, this statement does not establish pretext because there is no evidence that Camoplast ever saw this statement. In fact, given Villavicencio's own testimony, Camoplast could not have possibly been aware of this statement on August 4 when it first told Villavicencio that there was no work available within her restrictions. Villavicencio testified that she dropped the form off for Huskey to complete on August 11, 2008, and she picked it up on August 13, 2008. (Villavicencio Dep. at 71-72.) The doctor completed the medical portion of the form on August 14, 2008, and there is no evidence that Villavicencio ever returned it to Camoplast. Moreover, the form simply does not show that Villavicencio could perform her regular job or any other job, as Villavicencio claims. In response to the question of whether Villavicencio could perform her usual occupation, the doctor checked "No" and wrote "5 mos." In response to the question whether Villavicencio could work at any job, the doctor checked "Yes" but did not indicate what, if any, jobs she could perform.

Villavicencio next argues that Camoplast's assertion that there was no light work for her was pretext because she was permitted to perform light work until she complained about race discrimination. But, as already discussed, Villavicencio also submitted a doctors note that imposed

new and greater restrictions that did not apply when Camoplast had given Villavicencio light work in the past. The declarations upon which Villavicencio relies to prove that light work was available are insufficient to show pretext. In her declaration, Villavicencio merely states that "I am informed and believe that light work was available at Camoplast in August 2008 and until December 23, 2008." (Villavicencio Decl. ¶ 15.) This statement, based upon information and belief, is inadmissible hearsay. Moreover, Villavicencio fails to identify what work Camoplast had that was light work *and* could be performed with one hand, as required by her restrictions. Similarly, Jessica Meister's declaration, which merely states that between August 2008 and December 23, 2009 Camoplast hired new employees, some of whom did light work, including inspection work and sweeping floors, fails to show pretext. Meister does not state that any of the new employees hired during this time could only use one hand, nor does she indicate whether inspection work or sweeping could be performed with one hand. Moreover, Meister's statements are generalizations with few or no details and, as such, are insufficient to create a create a genuine issue of material fact with regard to pretext.

Villavicencio also seeks to cast doubt on Camoplast's assertion that no light work was available through statements that Camoplast's representatives made at Villavicencio's unemployment hearing. Villavicencio may not use such statements to show pretext because the Michigan Employment Security Act precludes their use in this case. This Court has previously addressed the issue of whether information obtained from an employer during the course of an Unemployment Insurance Agency (formerly Michigan Employment Security Commission) administrative hearing is admissible in a court proceeding and concluded that such evidence is not admissible. *See Summerville v. ESCO Co. Ltd. P'ship*, 52 F. Supp. 2d 804, 811-812 (W.D. Mich. 1999). In *Summerville*, this Court noted that the Michigan Employment Security Act "prevents a

15

party from using information obtained by the MESC from an employer in a court proceeding 'unless the commission is a party to or a complainant in the action or proceeding, or unless used for the prosecution of fraud, civil proceeding, or other legal proceeding pursuant to subdivision (2).'" *Id.* at 811 (quoting M.C.L. § 421.11(b)(1)(iii)). The Court further noted that subdivision (2) limits disclosure to instances where the information is sought by a qualified requesting agency investigating a claim of welfare fraud. *Id.* In light of this analysis, which is equally applicable in this case, the testimony of Camoplast's representatives at the unemployment hearing is inadmissible.

Finally, Villavicencio argues that Camoplast's claim in its December 10, 2008, letter that she had not reported for work since August 4 is pretext because it is false. Villavicencio asserts that she reported for work on August 6, 7, 11, and 20; November 20; and December 10 and 15, 2008. (Villavicencio Decl. ¶ 13.) Villavicencio's argument is difficult to follow because she fails to explain how the statement that she had not reported for work as of August 4, 2008, due to an injury restricting her to one-handed work could show that Camoplast's reasons for refusing to give her work are pretext. Moreover, Villavicencio's claim that she showed up for work on those dates contradicts her prior deposition testimony explaining that she went to Camoplast's facility for purposes other than to work, such as to pick up her paycheck, meet with Huskey regarding the August 1 letter, and drop off her form for public assistance.[5] (Villavicencio Dep. at 65-66, 70-71, 80-82.) It is well established in the Sixth Circuit that a party may not create a genuine issue of material fact by filing an affidavit that contradicts her prior deposition testimony. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Thus, Villavicencio's claim in her declaration that she showed up for work must be disregarded.

---

[5] Of course, Villavicencio's claim that she showed up for work on December 15 is true and undisputed by Camoplast. However, that fact is immaterial, as the letter upon which she relies was written on December 10.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Camoplast's motion to strike Villavicencio's affidavits, grant Villavicencio's motion to file declarations, and grant Camoplast's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated: October 22, 2010                               /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE